IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ALONZO JAQUA REID,**

      Petitioner,

v.                                       Civil Action No. **3:12CV556**

**HAROLD CLARKE,**

      Respondent.

**MEMORANDUM OPINION**

Alonzo Jaqua Reid, a Virginia state prisoner proceeding *pro se* and *in forma pauperis*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his conviction in the Circuit Court of the City of Chesapeake, Virginia ("Circuit Court") for aggravated malicious wounding, use of a firearm in the commission of a felony, and possession of a firearm by a convicted felon. In his § 2254 Petition, Reid argues entitlement to relief based upon the following grounds:

Claim One:     The Circuit Court erred in finding "trial counsel was not ineffective for failing to evaluate and present as evidence the victim's medical records" which would have demonstrated that "the shooting did not happen as the victim testified it had." (Mem. Supp. § 2254 Pet. (ECF No. 6–1) 12–13.)[1]

Claim Two:     The Circuit Court erred in "[f]inding that trial counsel was not ineffective for failing to present mitigating psychological evidence" that Reid had been robbed and shot in March of 2001, which would have explained why Reid "would have been nervous when the victim arrived and was trying to leave when the shooting occurred." (*Id.* at 13.)

---

[1] The Court employs the pagination assigned by the Clerk's CM/ECF docketing system for Reid's § 2254 Petition and attachments. The Court corrects the capitalization in the quotations from Reid's submissions. The Court removes the internal quotation marks from Reid's claims.

Claim Three:     The Circuit Court erred in "[f]inding that trial counsel was not ineffective for failing to impeach the victim and his companion with their prior inconsistent statements to police and testimony." (*Id.*)

Claim Four:      The Circuit Court in "[f]inding that trial counsel was not ineffective for failing to request an expert witness to evaluate the victim's medical records" that would have "contradict[ed] the prosecution's theory as to how the shooting occurred." (*Id.*)

Claim Five:      The Circuit Court erred in "[f]inding that counsel was not ineffective for failing to lodge appropriate objections to the prosecutions inappropriate comments regarding how the offense occurred and the victim's injury." (*Id.* at 13–14.)

Claim Six:       The Circuit Court erred in "[f]inding counsel was not ineffective for failing to move for suppression of [Reid's] December 25, 2006 statement to police[,] which was obtained in violation of his right against self-incrimination." (*Id.* at 14.)

Respondent moves to dismiss the § 2254 Petition. Respondent provided Reid with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 14.) Reid has responded. The matter is ripe for disposition.

The Court notes that Reid's claims, alleging purported errors of the Circuit Court in his state post-conviction proceedings, provide no cognizable basis for federal habeas corpus relief. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted). Nevertheless, like the Respondent, the Court construes Reid to raise the substantive claims of ineffective assistance of counsel in his § 2254 Petition.

## I. PROCEDURAL HISTORY

Following his bench trial, the Circuit Court sentenced Reid to a total sentence of fifty-eight years in prison with twenty-eight years and eleven months suspended. *Commonwealth v. Reid*, Nos. CR07–1484, CR07–1485, CR07–1650, at 1–3 (Va. Cir. Ct. Jan. 20, 2009). The Court of Appeals of Virginia denied Reid's petition for appeal. *Reid v. Commonwealth*, No. 0351–09–1, at 1, 6 (Va. Ct. App. Oct. 1, 2009). The Supreme Court of Virginia refused

Reid's subsequent petition for appeal. *Reid v. Commonwealth*, No. 100295, at 1 (Va. Aug. 4, 2010).

Reid filed a petition for a writ of habeas corpus in the Circuit Court raising the underlying ineffective assistance claims in the instant § 2254 Petition. Petition for Writ of Habeas Corpus at 8–9, *Reid v. Watson*, No. CL11–1923 (Va. Cir. Ct. filed July 28, 2011). Finding that Reid failed to demonstrate ineffective assistance of trial counsel, the Circuit Court dismissed his petition. *Reid v. Watson*, No. CL11–1923, at 9 (Va. Cir. Ct. Dec. 15, 2011). Reid filed an appeal to the Supreme Court of Virginia, raising the identical claims as the instant § 2254 Petition. Petition for Appeal at 2–4, *Reid v. Watson*, No. 120417 (Va. filed Mar. 13, 2012). Finding no reversible error, the Supreme Court of Virginia refused the Petition for Appeal. *Reid v. Watson*, No. 120417, at 1 (Va. July 16, 2012).

## II.   THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## III. SUMMARY OF THE EVIDENCE

The majority of Reid's ineffective assistance of counsel claims stem from his belief that insufficient evidence existed to convict him of maliciously wounding the victim, Leonard Waters. The Court of Appeals of Virginia aptly summarized the evidence of Reid's guilt as follows:

> Appellant was socializing in the garage of a mutual friend when Leonard Waters, the victim, approached. Waters asked appellant if he was able to repay the $70 he had previously loaned appellant. Appellant responded, "Let me holler at you" or "I'll meet with you outside." Kelvin Harris, a friend of Waters, accompanied the men outside. Appellant and Waters argued over the loan briefly before the encounter escalated. Harris testified, "all of a sudden [the encounter] changed from an argument to [appellant] going in his pocket and pulling his gun out." Appellant, standing at an arm's length distance, pointed a .25 caliber handgun at Waters's chest, and said "I'll shoot you right now." Waters tried to grab the gun to direct it away from his body by grabbing the wrist of appellant's gun-toting arm and pushing it upward. Appellant responded by tilting the gun down towards Waters and pulling the trigger. The bullet entered Waters's back between his shoulder blades, four to five inches below the nape of his neck. Waters testified that he immediately lost feeling from his "chest down."
>
> Harris testified at trial that he watched appellant shoot Waters. Having been shot, Waters "dropped instantly." When appellant "came up with the gun, I kicked it out of his hand," Harris testified. He and appellant then struggled to retrieve the gun until Harris got his hand on the gun and "tossed it up a little bit further" in order to "get it from both of us." While Harris went to "call the ambulance," he noticed appellant "looking through the grass." Moments later, appellant pulled his car "up on the grass, and started shining the light in the grass

looking for the gun" in the dark.[2] Harris watched as appellant "backed out, hit my car," and then "fled the scene."

Appellant stipulated at trial that the victim's paralysis from the gunshot wound sufficed to prove the element of permanent injury. Nonetheless, appellant denied bringing or possessing the gun. Harris brought the gun to the encounter, he claimed, and it went off when he grabbed it. In rebuttal, the Commonwealth impeached appellant's testimony with inconsistent statements he gave during an interview with a detective.[3] Appellant admitted to lying to the police officer about nearly everything that happened that evening. "Everything else was a lie," he conceded, apart from his testimony that Harris and Waters brought the gun and pulled it on him.

The trial court found the case rested on "a credibility issue as to who is telling the truth about what happened that unfortunate night." "The defendant has not claimed that he pulled the gun in self-defense," the court continued, or that "it actually accidentally discharged." Contrary to appellant's testimony, the court determined, appellant "brought the gun to the property" where he "pulled the weapon" on Harris and Waters. After shooting Waters, appellant "wanted to find" the gun, and then decided "that it was time for him to leave . . . backing into the car" as he drove away. "The lies to Detective Maloney as to where he went afterwards, whose car he was driving, where it was parked, and all those things compound the problem for the defendant as well as the testimony" of the jailhouse informer, whose knowledge of the incident did "ring true." Thus the court found "beyond a reasonable doubt that the defendant committed the offenses as charged."

*Reid v. Commonwealth*, No. 0351-09-1, at 2–3 (Va. Ct. App. Oct. 1, 2009) (alteration in original) (omission in original).

## IV. INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable

---

[2] A jailhouse informant testified appellant confessed to having shot Waters in the back and then to looking for the gun afterwards. Tire tracks in the grass also confirm that a vehicle had been driven where Harris described.

[3] Appellant explained that his fingerprints may be on the gun because he may have handled it about a month before the encounter.

5

professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claims One and Four, Reid argues that counsel deficiently failed to obtain and utilize the victim's medical records to demonstrate that the shooting occurred in a different manner than the Commonwealth's evidence portrayed at trial. Specifically, Reid faults counsel for failing to introduce the records into evidence and failing to request a medical expert to evaluate the records. Reid argues that the medical records would have demonstrated that "the victim was shot 'below the shoulders,' and not from above his head," proving that Reid acted in self-defense and "[h]e never once intended to shoot the victim." (Mem. Supp. § 2254 Pet. 16.)

Counsel reasonably eschewed utilizing the medical records or an expert witness during trial as Reid urges here. Counsel's initial defense theory was that the victim, Waters, not Reid, produced the gun, and during a struggle the gun discharged, striking Waters. (July 8, 2008 Tr. 15.) Counsel attempted to elicit testimony demonstrating that witnesses' Waters and Harris began the physical altercation with Reid, and the firearm discharged unintentionally during the struggle. Nevertheless, both Waters and Harris testified that Reid produced the gun, pointed the gun at Waters, a struggle ensued between Reid and Waters, and Reid fired the weapon at Waters. (July 8, 2008 Tr. 26, 29–30, 61–69, 76–77.) Specifically, Waters testified that Reid pointed the gun at Waters's chest, Waters attempted to grab Reid's wrist and push the gun up and away, and

6

Reid tilted the gun down over Waters' head and fired. (July 8, 2008 Tr. 61–69.) Harris testified that Reid pointed the gun at Waters, stated "I will shoot you right now," Waters attempted to reach for the gun, and Reid "shot him in the back." (July 8, 2008 Tr. 76–77.) While counsel attempted to instill doubt by questioning Harris and Waters about whether the gun may have fired accidentally during the struggle, both witnesses stated Reid shot Waters.

Reid himself derailed counsel's defense theory that Reid unintentionally shot Waters. At the very beginning of his direct examination, Reid denied that he had possession of the gun or that he shot anyone. (July 8, 2008 Tr. 139.) Reid testified that he had no gun, and that Harris, Waters's friend, "jumped him" and pulled a gun on Reid. (July 8, 2008 Tr. 148-51, 160.) After Reid denied shooting anyone, counsel reasonably refrained from introducing evidence to support the theory that Reid actually fired the weapon, but did so unintentionally.

Moreover, Reid fails to demonstrate how the introduction of the victim's medical records and obtaining an expert to evaluate the records would result in a reasonable probability of different outcome of Reid's trial.[4] Reid fails to articulate how the medical records or an expert witness would bolster his defense at trial as Reid denied that he had possession of the gun or that he shot anyone. Contrary to his trial testimony, Reid now suggests that he fired the gun, but contends that he acted in self-defense and had no intention of shooting the victim. The self-defense or unintentional shooting theories runs counter to Reid's testimony at trial that he did not shoot anyone. Thus, Reid fails to demonstrate prejudice from counsel's failure to use the victim's medical records to advance a defense theory unsupported by Reid's testimony.

---

[4] Reid fails to provide "concrete evidence" of the exculpatory nature of the medical records or the expert testimony. *Cf. United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004). Reid also makes no specific proffer as to the expert testimony. *See Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (dismissing claims where petitioner failed to make a specific proffer as to the testimony of the omitted witness). As such, Reid lacks the ability to demonstrate a reasonable result of acquittal. *See Terry*, 366 F.3d at 316.

Because Reid demonstrates neither deficiency of counsel nor resulting prejudice, Claims One and Four will be DISMISSED.

In Claim Two, Reid faults counsel for failing to introduce "mitigating" evidence that Reid had been robbed and shot in March of 2001, which would have explained why Reid "would have been nervous when the victim arrived and was trying to leave when the shooting occurred." (Mem. Supp. § 2254 Pet. 13.) In rejecting this claim, the Circuit Court made the following findings:

> The presentation of evidence is a matter of trial strategy. *See Abbott v. Peyton,* 211 Va. 484, 178 S.E.2d 521 (1971). Defense counsel's theory of the case was, first, the gun was not Reid's, and second, even if the gun was Reid's, the shooting had not been done with malice. The fact that Reid had been shot and robbed five years earlier in an unrelated incident was not relevant evidence. The petition has not demonstrated deficient performance or prejudice.

*Reid,* No. CL11–1923, at 5–6.

The Court discerns no unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Reid demonstrates no prejudice from counsel's failure to introduce evidence that Reid had been shot in 2001. Such evidence could tend to reinforce the notion that Reid brought the firearm to the altercation and would do little to further Reid's defense. Reid fails to demonstrate deficiency or prejudice. Thus, Claim Two will be DISMISSED.

In Claim Three, Reid faults counsel for failing to impeach the witnesses with their prior inconsistent statement to police. The Circuit Court rejected this claim and found:

> The record refutes this claim as it shows counsel thoroughly cross-examined Waters and Harris. Cross-examination of witnesses is a matter of trial strategy. *See Sallie v. North Carolina,* 587 F.2d 636, 640 (1978); *Cardwell v. Netherland,* 971 F. Supp. 997, 1019–20 (E.D. Va. 1997). Counsel also called as a witness the

> police officer who talked to Waters after the shooting occurred. This claim fails
> to meet either prong of the *Strickland* standard.

*Reid*, No. CL11–1923, at 6.

Reid fails to demonstrate the Circuit Court's conclusion is incorrect, much less

unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Reid contends that counsel failed "to completely

attack credibility of both the victim and his companion" with their prior inconsistent statements

about who shot Waters and whether the shooting occurred during a physical struggle. (Mem.

Supp. § 2254 Pet. 21–23.) The Circuit Court heard evidence that Waters initially told the police

at the scene that he did not know who shot him, but then later told police that Reid shot him.

(July 8, 2008 Tr. 39–40.) Counsel questioned Waters about his inconsistent statements to police,

and the inconsistencies in his trial and preliminary hearing testimony about the physical struggle.

(July 8, 2008 Tr. 43–46, 53–57, 64–69.) Counsel also questioned the officer who interviewed

Waters in the hospital. The officer testified that Waters told him that he intended to fight Reid

for the money owed, and that Waters "rushed" Reid and grabbed the gun from him. (July 8,

2008 Tr. 122–23.) Counsel also questioned Harris about his initial statement to police that he did

not know who shot Waters. (July 8, 2008 Tr. 88.) The Circuit Court heard the inconsistencies in

Waters's and Harris's testimony and nevertheless found their testimony more credible than

Reid's. Reid fails to demonstrate how any further impeachment of Waters or Harris would have

resulted in a reasonable probability of a different outcome at trial. Thus, Reid demonstrates no

prejudice and Claim Three will be DISMISSED.

In Claim Five, Reid faults counsel for failing to object to the prosecutor's comments in

the closing argument that the victim's injury was "'aggravated.'" (Mem. Supp. § 2254 Pet. 25.)

Reid suggests that counsel failed "to object to the prosecutor 'acting as witness,'" when "[t]he

facts were very much still in dispute at that stage and unquestionably the requisite elements to

constitute the 'aggravated' act were still unruled upon." (*Id.*) In rejecting this claim, the Circuit

Court explained, in part:

> This claim is baseless. In the context of the aggravated malicious wounding
> statute, Virginia Code § 18.2–51.2, the term "aggravated" refers to the fact that
> the victim is "severely injured or is caused to suffer permanent and significant
> physical impairment." In this case, Waters was rendered a quadriplegic by the
> shooting, and there was no question that he had been severely, permanently and
> significantly injured. Counsel has no reasonable basis to contest this fact and
> cannot be found ineffective for no objecting to the prosecutor's saying the injury
> was aggravated. . . .

*Reid*, No. CL11–1923, at 6.

The Court discerns no unreasonable application of the law or an unreasonable

determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). At the beginning of trial, Reid

stipulated to the aggravated nature of Waters injuries. (July 8, 2008 Tr. 16.) Thus, counsel

reasonably eschewed the meritless objection Reid urges here.[5] Reid demonstrates no deficiency

of counsel. Claim Five will be DISMISSED.

In Claim Six, Reid faults counsel "for failing to move for suppression of [Reid's]

December 25, 2006 statement to [Detective Mahoney] which was obtained in violation of his

right against self-incrimination." (Mem. Supp. § 2254 Pet. 14.) He argues that "her line of

questioning" and "presence at [Reid's] residence on Christmas Day was enough to overcome any

conscious thought by appellant." (*Id.* at 26.) In rejecting this claim, the Circuit Court found:

> Detective Patricia Mahoney interviewed Reid at his house on the morning after
> the offense. Reid was not under arrest then. Reid initially told her he had been
> "jumped" by two unknown individuals, but he later said one of the men was
> "Slim," which was Waters' street name. Later the same day, after Maloney had
> obtained a warrant for Reid's arrest, Officer Marciniak interviewed Reid.

---

[5] Additionally, given that the resolution of Reid's claim of ineffective assistance of
counsel is highly dependent upon Virginia criminal law, Reid fails to demonstrate prejudice.
*Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective
assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a
federal court should be especially deferential to a state post-conviction court's interpretation of
its own state's law.")

According to the Commonwealth's discovery response, Marciniak advised Reid of his rights. Reid said he had been jumped by Slim and another person, one of them pulled a gun on him, and he grabbed the gun, which went off as he struggled with another person. He then left the scene.

Because Reid was not in custody when Detective Maloney first talked with him, she was not required to advise him of his rights. *See, e.g., Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) (suspect must be given *Miranda* warnings only where there is a "formal arrest or restraint on the freedom of movement of the degree associated with a formal arrest"); *Ramos v. Commonwealth*, 30 Va. App. 365, 516 S.E.2d 737 (1999) (*Miranda* does not apply to temporary investigatory detention that does not escalate into *de facto* arrest). Counsel thus had no grounds to move to suppress Reid's conversation with her. . . . The petitioner has not shown counsel's performance was deficient.

*Reid*, No. CL11–1923, at 7–8 (paragraph numbers omitted) (citation omitted).

Reid fails to demonstrate the Circuit Court's conclusion is incorrect, much less unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). As the Circuit Court aptly explained, Reid was not "in custody" for *Miranda* purposes when Detective Mahoney initially interviewed him at his house the morning after the shooting. Reid was not under formal arrest or restrained in his movement to the "degree associated with a formal arrest." *Yarborough*, 541 U.S. at 662 (quoting *California v. Beheler*, 463 U.S. 1121, 1224 (1983)). Thus, counsel reasonably eschewed the meritless suppression argument Reid advances here.

## VI. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 8) will be GRANTED. Reid's claims will be DISMISSED and his § 2254 Petition will be DENIED. The action will be DISMISSED. An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

11

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Reid fails to meet this standard.

An appropriate Final Order shall issue.

/s/
James R. Spencer
United States District Judge

Date: 9- 5-13
Richmond, Virginia

12